**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANTHONY STEVENSON,

    Plaintiff,

v.

DR. JOHN HOCHBERG,

    Defendant.

Civ. No. 08-3263 (DRD)

**O P I N I O N**

*Appearances by:*

PODVEY, MEANOR, CATENACCI, HILDNER, COCOZIELLO & CHATTMAN PC
by: Anthony M. Rainone, Esq.
The Legal Center
One Riverfront Plaza, 8th Floor
Newark, New Jersey 07102

    *Attorneys for Plaintiff*


MARKS, O'NEILL, O'BRIEN & COURTNEY, P.C.
by: Paul J. Smyth, Esq.
6981 North Park Drive, Suite 300
Pennsauken, New Jersey 08109

    *Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

Plaintiff, Anthony Stevenson, was incarcerated at Northern State Prison ("NSP") from March 28, 2008 until his release on April 30, 2010. On April 30, 2008 he instituted this action against Defendant, John Hochberg, M.D., who served as Medical Director for NSP until February or March of 2009. Plaintiff's complaint (the "Complaint"), which was originally filed in state court, alleges that Defendant refused to provide Plaintiff with necessary medical treatment in violation of his "State and Federal rights to be free of cruel and unusual treatment."

On March 30, 2009 Defendant filed a Motion to Dismiss the Complaint asserting that Plaintiff had failed to exhaust his administrative remedies. By Order dated May 26, 2009 this court denied Defendant's Motion. Defendant now moves to dismiss the Complaint for failure to state a claim or, in the alternative, for summary judgment. For the reasons set forth below, Defendant's Motion will be denied.

## I.  BACKGROUND[1]

Plaintiff was an inmate in the New Jersey prison system from September 26, 2003 to April 30, 2010. He began suffering from back pain as early as May 22, 2005, when he first submitted a Health Service Request ("HSR") to prison officials seeking medical treatment for such pain. From that date until February 27, 2009 Plaintiff submitted a total of 18 HSRs relating to his back pain.

Plaintiff was treated with pain medication beginning in October of 2006 and was eventually referred to Saint Francis Medical Center for an MRI on February 13, 2008. The MRI showed that Plaintiff had a herniated disc but he did not learn that fact for another year because he was not given the MRI results until February 6, 2009. On March 24, 2008 Plaintiff submitted

---

[1] Although Defendant is moving for summary judgment he did not file a Statement of Undisputed Material Facts as required by L. Civ. R. 56.1 and the factual summary in his brief consists of only two paragraphs. Thus, the following summary is based almost entirely on Plaintiff's Statement of Undisputed Material Facts.

2

the first of many HSRs requesting the MRI results.  On March 28, 2008 he was transferred to NSP and on April 16, 2008 he submitted another HSR requesting the MRI results.  On April 30, 2008, having still not received the MRI results, Plaintiff filed his Complaint in state court.  Defendant removed the action to this court on June 30, 2008 and filed his Answer on July 15, 2008.

With his case pending in this court Plaintiff continued submitting HSRs relating to his back pain.  On September 5, 2008 he was approved for a consultation with a neurosurgeon.  On November 25, 2008 Defendant ordered an injection of ketorolac, an anti-inflamitory, for Plaintiff.  On December 1, 2008 Plaintiff learned that the consultation with the neurosurgeon had been cancelled.

Plaintiff contends that the met with Defendant on December 18, 2008 and that Defendant offered to schedule a surgical procedure for Plaintiff called a discectomy if Plaintiff agreed to dismiss this action.  When Plaintiff refused, Defendant allegedly prescribed prednisone and declined to schedule the surgery.

On December 19, 2008 Plaintiff asked to be examined by Defendant but was refused.  On December 22, 2008, Plaintiff received x-rays.  The next day he was again prescribed prednisone.  On January 2, 2009 Plaintiff was advised that the x-rays were "normal".  On February 6, 2009 Plaintiff was finally given the MRI results showing that he had a herniated disc.

On February 13, 2009 Plaintiff spoke with Defendant about the discectomy and was told that more tests were needed to determine if the surgery was necessary.  Plaintiff asserts that Defendant again asked him to dismiss the lawsuit but Plaintiff declined to discuss it.  At the same meeting, Plaintiff asked why the consultation with the neurosurgeon was cancelled and was told by another member of the medical staff that the x-rays showed it was not necessary.  Plaintiff

3

asserts that this could not have been the real reason the consultation was cancelled because the x-rays were taken after the consultation was cancelled.

Following Defendant's termination as Medical Director at NSP in February or March of 2009, Plaintiff was examined by a neurosurgeon, Dr. Chiurco, and the new Medical Director, Dr. Perera.  It was ultimately determined, as had been shown by the MRI taken on February 13, 2008, that Plaintiff had a herniated disc.  On February 9, 2010 Dr. Chiurco performed a microdiscectomy to remove the herniated disc.  A post-surgery examination performed on March 16, 2010 revealed that the surgery was a success and Plaintiff's pain was relieved.

Dr. Chiurco later testified that pain killers are an appropriate treatment for a patient with Plaintiff's symptoms but, if such treatment does not work within six weeks, the patient should be referred to a specialist.  Dr. Chiurco also testified that a reasonable amount of time for Plaintiff to have received the results of the February 13, 2008 MRI would have been three weeks.  Plaintiff, however, did not receive those results for almost a year.  Likewise, he was treated with pain medication for almost four years, despite his repeated requests for alternative treatment, until he was finally referred to a specialist.

## II.  DISCUSSION

A.  <u>**Motion to Dismiss**</u>

Rule 12(b) requires that motions to dismiss for failure to state a claim "must be made before pleading if a responsive pleading is allowed.  Defendant filed his Answer on July 15, 2008.  Thus, a motion to dismiss is untimely and must be denied.

B.  <u>**Motion for Summary Judgment**</u>

**Summary Judgment Standard:** Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

4

law." Fed.R.Civ.P. 56(a).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law."  <u>Id.</u>  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case.  <u>Id.</u> at 325.  If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine fact issue exists and a trial is necessary.  <u>Id.</u> at 324.  In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party.  <u>See</u> <u>Pa. Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995).  The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  If there are no issues that require a trial, then judgment as a matter of law is appropriate.  <u>Id.</u> at 251-52.

**Plaintiff's Claim:** Plaintiff asserts that he was denied adequate medical care in violation of his constitutional rights.  In order to state a cognizable claim under 42 U.S.C. § 1983 for denial of Eighth and Fourteenth Amendment rights to reasonable medical care, a prisoner must

allege more than mere negligence on the part of the individuals responsible for his or her medical care. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment." Id. To the contrary, a prisoner asserting a § 1983 claim for denial of medical care "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id.

"To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 328 (3d Cir. 2009) (citing Estelle, 429 U.S. at 104-05 (1976)). That standard requires "subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk" to an inmate's health and consciously disregard that risk in order to be held liable. Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer v. Brennan, 511 U.S. 825, 837-38 (1994)). "[A]n inadvertent failure to provide adequate medical care cannot be said to constitute" deliberate indifference. Estelle, 429 U.S. at 105-06. While prison officials may be held liable for "intentionally denying or delaying access to medical care," id. at 104, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844.

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex. rel Walker v. Fayette County, Pa., 599 F.2d 573, 575 n.2 (3d Cir. 1979). "[P]rison authorities are

6

afforded considerable latitude in the diagnosis and treatment of prisoners." Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).  "There may … be several ways to treat an illness," and the decision of a prisoner's physicians to opt for one reasonable method over another does not give rise to an Eighth Amendment claim.  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  A medical decision not to order specific diagnostic tests is "a classic example of a matter for medical judgment," and cannot form the basis for a claim of deliberate indifference.  Estelle, 429 U.S. at 107 (discussing physician's decision not to conduct an x-ray on a prisoner who had suffered a back injury).  Similarly, the Court of Appeals for the Third Circuit has ruled that refusal to provide a given drug or method of treatment does not constitute deliberate indifference.  Walker, 599 F.2d at 575 (discussing refusal of prison authorities to provide methadone to an inmate undergoing withdrawal from heroin despite the fact that inmate displayed symptoms over a period of ten days and requested the former drug).  However, deliberate indifference exists where a prison official persists in a particular course of treatment in the face of resultant pain and risk of permanent injury.  White at 109.

In the present case it is undisputed that Plaintiff suffered from a serious medical condition.  Thus, the relevant questions are whether Defendant actually knew of Plaintiff's condition and whether the prescribed course of treatment was reasonable.  With regard to the first question, Defendant asserts that he had no knowledge of Plaintiff's condition until he examined Plaintiff on December 18, 2008.  However, the record contradicts that assertion because Defendant ordered a ketorolac injection for Plaintiff on November 25, 2008.

Moreover, the Department of Corrections Internal Management Procedures require the Medical Director for each prison facility to "direct[] all medical care, including the decision on the type of treatment and need for transfer to outside resources."  (Pl.'s Br. Exs. N-O, DOC

7

Internal Management Procedures).  Given Plaintiff's serious condition, his repeated requests for treatment, and his repeated requests for a referral to an outside specialist, a reasonable jury could conclude that DOC Procedures required Defendant to be involved in Plaintiff's treatment and he therefore must have known about Plaintiff's condition long before he claims to have known about it.  Thus, there is a genuine dispute as to when Defendant knew of Plaintiff's condition.

With regard to the second question, there is a genuine dispute of material fact as to whether Defendant's prescribed course of treatment was reasonable.  Dr. Chiurco's testimony suggests that prescribing pain killers for Plaintiff's condition would have been appropriate as an initial course of treatment, but that after approximately six weeks with no improvement, Plaintiff should have been referred to a specialist.  He also testified that Plaintiff should have received results of the February 13, 2008 MRI within about three weeks.  But Plaintiff was treated with pain medication for almost four years, despite his repeated requests for alternative treatment.  Similarly, he did not receive the MRI results for almost a year.

Even if Defendant was not aware of Plaintiff's condition until November 25, 2008, a reasonable jury could conclude that Defendant should have reviewed Plaintiff's medical records on that date and determined that: (1) the pain killers were ineffective; (2) Plaintiff had a herniated disc; and (3) Plaintiff needed to be referred to a specialist immediately.  Instead, Defendant prescribed more pain killers and Plaintiff had to wait until March 3, 2009 before seeing a specialist.  Thus, there is a genuine dispute as to whether Defendant's treatment of Plaintiff was reasonable.

Finally, there is a genuine dispute of material fact as to whether Defendant attempted to coerce Plaintiff into dropping this lawsuit by withholding treatment.  Plaintiff asserts that Defendant asked him to dismiss the suit on two different occasions and that Defendant offered to

refer him to a specialist if he did so.  In support of that assertion Plaintiff explains that he was scheduled to see a specialist but that the appointment was cancelled because, according to prison officials, the x-rays showed that he didn't need to see a specialist.  But, as Plaintiff points out, the x-rays were conducted after the appointment was cancelled.  Moreover, the MRI already showed that Plaintiff had a herniated disc and did, in fact, need to see a specialist.  Thus, there is a genuine dispute of material fact as to whether Plaintiff's appointment with the specialist was cancelled for a legitimate reason or whether it was cancelled so that Defendant could withhold the referral from Plaintiff as a way of coercing Plaintiff to drop this suit.  Thus, there are genuine disputes about when Defendant knew of Plaintiff's condition and whether his treatment of Plaintiff was reasonable.  A jury could find that Defendant deliberately withheld treatment of a serious medical condition.

### III.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment is denied.  The court will enter an order implementing this opinion.


 s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: December 1, 2010